RHODE ISLAND DEPOSITORS ECONOMIC PROTECTION CORPORATION

v.

Domenic B. RIGNANESE.

No. 97–194–Appeal.

Supreme Court of Rhode Island.

July 7, 1998.

Adam C. Robitaille, Providence, for Plaintiff.

Mal A. Salvadore, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

**OPINION**

WEISBERGER, Chief Justice.

This case comes before us on appeal by the defendant Domenic B. Rignanese (Domenic) from a partial summary judgment entered in the Superior Court in favor of the plaintiff, Rhode Island Depositors Economic Protection Corporation (DEPCO). The Superior Court justice ruled that the defendant was liable to DEPCO on a promissory note that he signed payable to Rhode Island Central Credit Union (RICCU). For the reasons that follow, we affirm the judgment of the Superior Court. The facts and travel of the case insofar as pertinent to this appeal are as follows.

This case had its origins in the credit-union crisis. *See In re Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943, 947 (R.I. 1991). On April 14, 1988, Thomas D'Andrea (D'Andrea) and, it is alleged the late John Lanfredi (Lanfredi), then-president of RICCU, met with Domenic and requested that he participate in restructuring loans previously made by RICCU to D'Andrea or his affiliates. Domenic agreed and executed a promissory note and guaranty in favor of RICCU for the amount of $1,950,000. The note was secured by condominium property located in Cumberland, Rhode Island (the property), and owned and managed by D'Andrea. Apparently Domenic agreed to replace D'Andrea as borrower because he had known him socially since high school and professionally for approximately twenty-five years.

According to Domenic, Lanfredi and D'Andrea assured him that the loan would mature in one year, that is, that Domenic would be removed as maker of the promissory note within one year. D'Andrea or entities affiliated with him would still be considered owners of the property. The loan would be repaid prior to the expiration of one year because of the projections of revenue expected from the sale of the property. In the event of default RICCU would foreclose on the mortgaged property securing the note, and Domenic's personal assets would not be placed at risk, even if a deficiency resulted from such a foreclosure sale.

None of the alleged assurances made to Domenic was in writing. Moreover, the form of the promissory note was such that Domenic as maker of the note would be fully liable in his personal capacity for its repayment.

On April 14, 1989, September 18, 1989, and April 10, 1990,[1] amendments were made to the promissory note. The first amendment increased the interest rate to 13.25 percent per year and extended the maturity date for the note from ON DEMAND to April 14, 1990. The second amendment decreased the interest rate to 12.5 percent. The third amendment decreased the interest rate to 12 percent. Domenic alleges that his signature was forged on all three amendments, as well as on the loan application and the financial statement. Sometime after April 14, 1988, defendant Roseanna L. Rignanese (Roseanna), was allegedly approached by Patricia Paolino, an employee of D'Andrea, and persuaded to sign the above-mentioned guaranty.

Domenic stated in his affidavit that from April 1988 through early 1991 he neither received a bill with respect to the note from RICCU nor made any payments on the account. Unfortunately D'Andrea also failed to make the payments required by the loan, whereupon RICCU became insolvent, and the receiver of RICCU commenced foreclosure proceedings against the property. The foreclosure sale took place on February 11, 1993, and resulted in proceeds of $424,295.

DEPCO, as successor to the receiver for RICCU, brought suit against Domenic to recover the deficiency remaining after the foreclosure sale. On May 31, 1995, DEPCO moved for summary judgment. The defendants opposed the motion, asserting that (1) the oral agreement reached among Domenic, D'Andrea, and Lanfredi excused Domenic from paying the note, (2) G.L.1956 § 6A–3–407 relieved Domenic of liability because the amendments contained his forged signature,[2] and (3) § 6A–3–305(2)(c) relieved Roseanna of liability on the basis of fraud in the factum.

On October 27, 1995, the motion justice granted summary judgment against Domenic holding that the *D'Oench, Duhme* doctrine codified in G.L.1956 § 42–116–23 and G.L. 1956 § 19–15–12 invalidated his claim that the oral agreement relieved him from liability.[3] The justice also held that even if the

---

**1.** The purported amendment does not specify the year, but the parties apparently agree that the amendment was executed as of April 10, 1990. The terms of the amendment corroborate this belief.

**2.** For purposes of summary judgment DEPCO did not contest Domenic's allegation that the amendments contained his forged signature.

**3.** General Laws 1956 § 19–15–12 was enacted in 1991 by P.L.1991, ch. 3, §§ 1, 2 and later repealed effective July 1, 1995, by P.L.1995, ch. 82, § 16. It appears in amended form now as G.L. 1956 § 19–12–13.

amendments to the promissory note did contain Domenic's forged signature, the original promissory note was valid and enforceable against him. She therefore entered judgment against Domenic for the full amount due pursuant to the original terms of the note. She denied, however, summary judgment against Roseanna with respect to liability on the guaranty, holding that a question of fact existed as to whether fraud in the factum occurred. Fraud in the factum is a real defense valid against even holders in due course.

Subsequently, Domenic moved for reconsideration of the motion justice's decision. That motion was heard on March 18, 1996, and denied. Domenic appealed and, on the basis that a Super. R. Civ. P. 54(b) finding had not been made by the motion justice, this Court remanded the case to the Superior Court for further proceedings by an order dated September 26, 1996. Thereafter, DEPCO filed a motion for entry of judgment pursuant to Rule 54(b) in the Kent County Superior Court. That motion was granted on January 13, 1997, and final judgment entered against Domenic for $2,849,270.78.

## Standard of Review

In reviewing the granting of a motion for summary judgment, this Court employs the same rules and analysis as the trial justice. *Paradis v. Zarrella,* 683 A.2d 1337, 1339 (R.I.1996). We shall sustain the judgment if our review of the pleadings, affidavits, and other relevant documents, viewed in the light most favorable to the nonmoving party, reveals no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. *Id.; see also Rhode Island Depositors' Economic Protection Corp. v. DiLorenzo,* 683 A.2d 370, 371 (R.I.1996) (order).

## Defendant's Claims

Domenic seeks to avoid liability by advancing four arguments. First, he contends that on the basis of the principles of surety law, the oral agreement to remove Domenic as maker of the promissory note within one year is enforceable. Second, he argues that DEPCO is not a holder in due course of the note for purposes of summary judgment, because it acquired the promissory note with knowledge that it was overdue, and it had actual knowledge of the forged documents. Third, he asserts that the fraudulent execution of the three amendments, prior to RICCU's insolvency, constitutes material and fraudulent alterations that discharge Domenic's liability pursuant to § 6A–3–407. Fourth, he argues that even if DEPCO is a holder in due course of the note, the real defense of illegality precludes an award of summary judgment.

A party opposing a motion for summary judgment has an affirmative duty to set forth specific evidence to demonstrate the existence of a genuine issue of material fact to be resolved at trial. *Rhode Island Depositors' Economic Protection Corp. v. NFD Co.,* 687 A.2d 452, 454 (R.I.1997) (per curiam); *DiLorenzo,* 683 A.2d at 371. The nonmoving party may not rest on allegations or denials in the pleadings, mere conclusions, or mere legal opinions. *Id.* Upon review of the record before us, we are persuaded by the motion justice's determination that absent a written agreement with the bank to waive his obligation on the original note, Domenic is liable for payment pursuant to the original terms of the note.

Section 42–116–23 codifies the *D'Oench, Duhme* doctrine that prohibits the enforcement of secret agreements entered into to conceal the truth from bank examiners. *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.,* 315 U.S. 447, 457–58, 62 S.Ct. 676, 679–80, 86 L.Ed. 956, 962 (1942); *see also Paradis v. Greater Providence Deposit Corp.,* 677 A.2d 1340, 1342 (R.I.1996) (discussing the codification of *D'Oench, Duhme* doctrine in § 19–15–12, which contains essentially the same language as § 42–116–23).

Section 42–116–23 clearly states:

"No agreement which tends to diminish or defeat the interest of [DEPCO] in any asset acquired by it under this chapter shall be valid against [DEPCO] unless such agreement:

(a) Is in writing;

(b) Was executed by the eligible institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the eligible institution;

(c) Was approved by the board of directors of the eligible institution or its loan committee; which approval shall be reflected in the minutes of the board or committee; and

(d) Has been, continuously, from the time of its execution, an official record of the eligible institution."

In order for Domenic to prevail on his first argument, the loan documents themselves would have to demonstrate clearly the existence of an explicit written agreement in the banks records between Domenic and bank officials that Domenic would be removed as maker within one year. *Rhode Island Depositors Economic Protection Corp. v. Ryan*, 697 A.2d 1087, 1091–95 (R.I.1997) (citing *NFD*, 687 A.2d at 454). In *NFD* we discussed two types of claims or defenses that may be asserted against the Federal Deposit Insurance Corporation (FDIC), the federal counterpart of DEPCO: (1) real defenses that make the underlying loan agreement void, and (2) claims arising from agreements that are supported by some explicit writing in the bank's official records or by an express written agreement between the banking institution and the claimant. *NFD*, 687 A.2d at 454; *see also Paradis*, 677 A.2d at 1343 (citing numerous federal cases and noting that any agreement sought to be enforced against a banking-institution receiver must be in writing and reflected in or upon the official records of the particular banking institution).

■ Domenic argues that the loan documents satisfy § 42–116–23 because RICCU participated in forging amendments to extend the maturity date of the promissory note (for the purpose of giving D'Andrea more time to repay), effectively replacing Domenic with D'Andrea as the party responsible for paying the note as evidenced by RICCU's receipt and acceptance of payments

on the note from D'Andrea. Thus, he contends, this Court's holding in *Industrial Trust Co. v. Goldman*, 59 R.I. 11, 17, 193 A. 852, 854 (1937), discharges Domenic from liability. In *Industrial Trust Co.* we held that a holder of a note who extends its maturity date by an agreement with a third person who assumed the obligation to pay the note discharges the maker of liability under the note. *Id.* at 19, 193 A. at 855.

The *Industrial Trust Co.* holding does not assist Domenic. In viewing the evidence most favorably for Domenic, the loan documents do not amount to an explicit written agreement that D'Andrea would assume the obligation of the note and that Domenic would be removed as maker. The loan documents before us make no mention of D'Andrea whatsoever. *Rhode Island Depositors Economic Protection Corp. v. Rivelli*, 672 A.2d 868, 869 (R.I.1996) (mem.) (record failed to provide any written or documentary evidence to show that an agreement existed as required by § 42–116–23).

■ Moreover, even if we had before us loan documents specifically supporting Domenic's argument that RICCU received and accepted payments on the note from D'Andrea, at best, this documentation might point to an implied agreement that D'Andrea was somehow additionally responsible, but even implied agreements fall under the rubric of § 42–116–23. *See Paradis*, 677 A.2d at 1343 (discussing the Supreme Court's decision in *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. 86, 90, 108 S.Ct. 396, 400–01, 98 L.Ed.2d 340, 346 (1987), which laid to rest any attempt to avoid the specific writing requirement in 12 U.S.C. § 1823(e)).[4] Any alleged agreement, including implied agreements sought to be enforced against the receiver of a banking institution or DEPCO, must be supported by some explicit writing. *Paradis*, 677 A.2d at 1343. Accordingly, the motion justice correctly found that § 42–116–23 precluded use of the oral agreement as a defense to enforcement of the original promissory note.

---

4. Section 1823(e) of 12 U.S.C. codifies the written-agreement and bank-record requirements of *D'Oench, Duhme & Co. v. Federal Deposit Insur-* *ance Corp.*, 315 U.S. 447, 457–58, 62 S.Ct. 676, 679–80, 86 L.Ed. 956, 962 (1942).

■ Domenic also asserts that RICCU's failure to remove him as maker of the note constitutes fraud in the factum. Pursuant to § 6A–3–305, fraud in the factum is a real defense that may be raised against a holder in due course like DEPCO.[5] *See Langley,* 484 U.S. at 93, 108 S.Ct. at 402, 98 L.Ed.2d at 348 ("[r]espondent conceded at oral argument that * * * fraud in the factum * * * would take the instrument out of § 1823(e)"); *Federal Savings & Loan Insurance Corp. v. Gordy,* 928 F.2d 1558, 1565 (11th Cir.1991) (assuming arguendo fraud in the factum precludes application of the *D'Oench, Duhme* doctrine). Section 6A–3–305 provides:

"To the extent that a holder is a holder in due course he or she takes the instrument free from:

(1) All claims to it on the part of any person; and

(2) All defenses of any party to the instrument with whom the holder has not dealt except:

(a) Infancy, to the extent that it is a defense to a simple contract; and

(b) Such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(c) Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) Discharge in insolvency proceedings; and

(e) Any other discharge of which the holder has notice when he or she takes the instrument."

Further, comment 7 to § 6A–3–305 describes factors that can be used to determine the existence of fraud in the factum:

"The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education and business experience; his ability to read or to understand English, the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay."

Domenic relies on *Federal Deposit Insurance Corp. v. Turner,* 869 F.2d 270 (6th Cir.1989), to support his argument that RICCU's failure to remove him as maker of the note constitutes fraud in the factum. In *Turner* the defendant signed for a bank officer a guaranty form with blanks for the debtor's name and the guaranty amount. *Id.* at 272. In the defendant's absence someone whited out the name of the bank printed on the form, inserted the name of another bank, and filled in the name of a debtor other than the one whose debt the defendant agreed to guarantee. *Id.* When the defendant learned what had happened, he contacted the bank holding the guaranty and followed the bank's instructions on how to rescind it, including sending a letter that was kept on file at the bank. *Id.* Moreover, he asked for proof of the removal of his guaranty, and the bank assured him that it had been removed from the files and destroyed. *Id.* at 273. Subsequently the bank failed, and the FDIC stepped in and sued to enforce the guaranty, which had never been removed. *Id.* The Court of Appeals for the Sixth Circuit found fraud in the factum because the whiting out and alteration of the guaranty defrauded Turner about the guaranty's essential terms. *Id.* at 276.

*Turner* is distinguishable from the instant case. The misrepresentations in that case involved essential terms appearing on the

5. This Court held in *Rhode Island Depositors Economic Protection, Corp. v. Ryan,* 697 A.2d 1087, 1093 (R.I.1997), "that the same concerns that prompted the federal courts to extend the [federal] holder-in-due course doctrine to the FDIC apply with equal force to DEPCO, even though both the FDIC and DEPCO acquire the assets of failed institutions in bulk transfers and not in the ordinary course of business."

face of the guaranty that Turner signed, for example, the names of the bank and the debtor. The present record contains no evidence that Domenic was unaware of the essential terms of the promissory note that he signed. Put another way, the record contains no evidence that Domenic signed the promissory note "without knowledge of its true nature or contents," *Langley*, 484 U.S. at 93, 108 S.Ct. at 402, 98 L.Ed.2d at 348, that any fraud occurred "within the instrument itself," *Leasing Service Corp. v. River City Construction, Inc.*, 743 F.2d 871, 877 (11th Cir.1984), or that Domenic signed the promissory note "without full knowledge of the 'character or essential terms.'" *McLemore v. Landry*, 898 F.2d 996, 1002 (5th Cir.), *cert. denied*, 498 U.S. 966, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990) (quoting *Templin v. Weisgram*, 867 F.2d 240, 242 (5th Cir.1989)); *see also Gordy*, 928 F.2d at 1566. In sum, no matter how gross or severe the alleged misrepresentation may be (that is, the failure to remove Domenic as maker within one year), "it did not relate to the nature, contents or [written] terms" of the promissory note he executed. *Gordy*, 928 F.2d at 1561. At most the assurances—misrepresentations were mere inducements to its execution. Thus we conclude Domenic did not suffer from fraud in the factum with respect to the terms of the promissory note he signed.

Further, Domenic signed the promissory note after having received oral assurances that he would not be responsible for repayment or incur any personal liability in relation to the transaction. That is, he knowingly participated in a scheme that was likely to mislead government bank examiners. This unrecorded agreement is the very type of evasion from a written obligation that the *D'Oench, Duhme* doctrine seeks to render

invalid as a defense. It operates to estop a borrower from challenging a note's validity as against DEPCO when the borrower has lent himself to a scheme or arrangement to mislead bank examiners. *D'Oench, Duhme & Co.*, 315 U.S. at 459, 62 S.Ct. at 680, 86 L.Ed. at 963 (persons who for the accommodation of a bank execute a note should be estopped from thereafter asserting that the parties agreed that the instrument should not be enforced); *Federal Deposit Insurance Corp. v. McClanahan*, 795 F.2d 512, 515 (5th Cir.1986) (the maker of a note is estopped from offering a secret agreement as a defense to recovery by the FDIC); *Federal Deposit Insurance Corp. v. Investors Associates X., Ltd.*, 775 F.2d 152, 154 (6th Cir.1985) (a wrongdoer or one who lends himself or herself to aid a fraudulent scheme should not be able to defend his or her actions upon the basis of events emanating out of a transaction that violates public policy).

Moreover, even if Domenic were ignorant of the scheme, he could still be held liable as long as he was responsible for the creation of the note. *D'Oench, Duhme & Co.*, 315 U.S. at 461, 62 S.Ct. at 681, 86 L.Ed. at 964 (a maker would be liable even if he or she was ignorant of the fraudulent scheme, as long as he or she was responsible for the creation of the note); *Gordy*, 928 F.2d at 1566 (the "policies underlying *D'Oench, Duhme* call for application of the doctrine even in the absence of bad faith, recklessness or negligence on [the part of a defendant]"); *Ryan*, 697 A.2d at 1095 (innocent intent provides no exception in *D'Oench, Duhme* cases).

■■■■ Domenic's second argument—that pursuant to § 6A–3–302,[6] DEPCO is not a holder in due course of the note because it acquired the promissory note with knowledge that it was overdue—is not properly before this Court. It is well settled that this Court

---

6. General Laws 1956 § 6A–3–302 provides:
 "(1) A holder in due course is a holder who takes the instrument:
 (a) For value; and
 (b) In good faith; and
 (c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
 "(2) A payee may be a holder in due course.
 "(3) A holder does not become a holder in due course of an instrument:

 (a) By purchase of it at judicial sale or by taking it under legal process; or
 (b) By acquiring it in taking over an estate; or
 (c) By purchasing it as part of a bulk transaction not in regular course of business of the transferor.
 "(4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased."

will not consider on appeal an issue that was not raised before the trial court. *Casey v. San–Lee Realty, Inc.*, 623 A.2d 16, 18 (R.I. 1993); *Bouchard v. Clark*, 581 A.2d 715, 716–17 (R.I.1990). An exception to the raise-or-waive rule is that this Court will review allegations of violations of basic constitutional rights but even then only in very narrow circumstances. *See State v. Burke*, 522 A.2d 725, 731 (R.I.1987). No constitutional claim exists in this case; therefore, the exception as set out in *Burke* is inapplicable.

The record discloses no contention by Domenic below that DEPCO was not a holder in due course because the note was overdue. Rather, the record discloses that Domenic relied on § 6A–3–302 to challenge only DEPCO's status as a holder in due course because it acquired RICCU's assets by purchasing them as part of a bulk transaction. Domenic was certainly not without opportunity to allege the defense that DEPCO acquired the note with knowledge that it was overdue. The allegation was never addressed. The issue is not properly before us.

▄▄ Next DEPCO asserts that the last part of Domenic's second argument, that DEPCO acquired the note with actual knowledge of the forged amendments, is not properly before this Court. Assuming without deciding that it is, we shall consider that issue together with Domenic's third argument that the forged amendments constitute material and fraudulent alterations that discharge his liability pursuant to § 6A–3–407.[7]

First, we acknowledge that neither the motion justice nor Domenic had the benefit of this Court's recent decision in *Ryan*. In that case we held that DEPCO was a holder in due course, even though it acquired the

assets of a failed institution in bulk transfer, and further, we agreed with the court in *Federal Deposit Insurance Corp. v. Wood*, 758 F.2d 156, 161–62 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985), that protections afforded receivers are not absolute. *Ryan*, 697 A.2d at 1094. Specifically, we observed that "[t]he primary and most effective way for a defendant to pierce the protections afforded by the federal holder in due course doctrine is for the party asserting the defense to establish that the FDIC possessed actual knowledge of the defense before taking the note." *Id.* (citing *Wood*, 758 F.2d at 162).

We conclude that even if the documents referred to by Domenic were sufficient to create a factual question about whether DEPCO had actual knowledge that the amendments were forged at the time it acquired the note, the Superior Court justice was correct in finding that the forged amendments themselves did not affect the validity of the original promissory note that Domenic admittedly signed. *See Doyle v. Trinity Savings and Loan Association, TSL*, 940 F.2d 592, 593 (10th Cir.1991) (holder in due course entitled to enforce note despite unauthorized alteration as long as the holder in due course took the note without notice of the defect). The motion justice reasoned:

"The alleged forged amendments extend the termination date of the note. They also raise, then lower the interest rate of the original note. The amendments state that in all other respects the note shall be enforceable. Even if we accept Domenic's contention of forged amendments to the note for purposes of summary judgment, that claim does not defeat the validity and

---

7. Section 6A–3–407, entitled "Alteration," provides:

"(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in:

(a) The number or relations of the parties; or

(b) An incomplete instrument, by completing it otherwise than as authorized; or

(c) The writing as signed, by adding to it or by removing any part of it.

"(2) As against any person other than a subsequent holder in due course

(a) Alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(b) No other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

"(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he or she may enforce it as completed."

enforceability of the underlying note. At most, defendants claim of forgery raises an issue of fact as to the interest rate affixed to the underlying obligation in default.

"Accordingly, as to Domenic's liability on the original note, summary judgment is granted, but summary judgment is denied as to any additional monetary amounts required under the three amendments to the note. The signatures on the loan application and the financial statement do not affect Domenic's liability under the note and do not provide the basis for any independent liability."

Although the court in *Doyle* remanded that case for the trial court to determine whether the holder in due course lacked notice of the unauthorized alteration, we decline to do so here. Unlike the instant case, in *Doyle* alterations affecting the interest rate were made "on the face of the note," ostensibly a fact that caused that court to find that the alterations were material because they changed the legal rights and liabilities of the parties. *Doyle v. Trinity Savings and Loan Association TSL,* 869 F.2d 558, 559–60 (10th Cir. 1989); *see also Leasing Service Corp.,* 743 F.2d at 877 ("[r]eal fraud must be within the instrument itself; it must concern the very nature of the agreement"). The forged amendments at issue here do not have that same effect. They do not change the legal rights and liabilities of the parties. Thus the alterations are not material, and as the Superior Court justice noted, the original note is valid and enforceable against Domenic. *See DiLorenzo,* 683 A.2d at 371 (allegations of fraud did not call into dispute the defendants' liability on the underlying obligation). Moreover, pursuant to § 6A–3–407(3) DEPCO is entitled to enforce the note according to its original tenor.

Finally, we address Domenic's fourth argument that even if DEPCO is a holder in due course, the defense of illegality precludes an award of summary judgment. Although DEPCO asserts that Domenic failed to raise the issue of illegality below, we shall assume without deciding that the issue is properly before us. Domenic argues that the question of the note's validity was dependent upon the enforcement of documents procured by ille-

gal conduct, specifically the forged loan application and three amendments. We disagree. As discussed above, the alterations do not defeat the validity or the enforceability of the original promissory note.

For the foregoing reasons the defendant's appeal is denied. The summary judgment entered in the Superior Court is affirmed. The papers in the case are remanded to the Superior Court.

FLANDERS and GOLDBERG, JJ., not participating.