DECISION
This matter comes before the court on cross-motions for summary judgment The Court has jurisdiction pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. Plaintiff also seeks specific performance of the contract.
The parties entered into a purchase and sale agreement for the conveyance of property located at 19 Seaview Avenue in Jamestown, Rhode Island. Both parties were represented by licensed real estate agents and the agreement was a standard form used in most real estate transactions. The agreement provided for a purchase price of $260,000 with a $13,000 deposit due upon execution of the purchase and sale. Upon execution of said agreement, the plaintiff delivered the required deposit. The agreement also stated that the closing was to be held on May 13, 1999 at which time the deed would be recorded and the balance of the purchase price paid.
The agreement contained the usual provisions for inspections, default, mortgage contingencies, risk of loss and the like. Plaintiff arranged for inspections to be conducted within the appropriate time frame. The test of the well revealed a substantially deficient condition and upon notification of same, defendant seller elected to repair the deficient condition. The parties also agreed to extend the closing date to the end of May. The repair to the well was completed in early to mid April and shortly thereafter, plaintiff was told that the seller did not wish to perform the contract or allow a re-inspection of the well. Subsequently, plaintiff buyer offered to accept the property "as is" and tender the frill purchase price.
It is at this juncture that the parties disagree on the facts. Plaintiff claims that the seller notified him that "seller considered himself excused from performance by reason of the passing of the May 13th closing date. Seller, by his attorney, subsequently informed buyer on May 24th that he considered himself excused from closing by reasons of buyer's alleged failure to provide a written commitment letter from a lender in accordance with Section 7 of the agreement." Plaintiff'sMemorandum, 2. Plaintiff also claims that he had submitted a commitment letter dated March 11, 1999 from USAA Federal Savings Bank along with his written offer in March.
The defendant disputes the "'fact' that 'Seller . considered himself excused from closing" stating that this is "a faulty conclusion of an interpretation made by the plaintiff." Memorandum. Defendant also denies that plaintiff tendered a commitment letter on March 13.
 Standard of Review
Summary judgment is a drastic remedy that should be sparingly and granted only when the pleadings, affidavits, and discovery materials demonstrate no genuine issue of material fact exists. Superior BoilerWorks. Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631 (R.I. 1998) (citations omitted); R.I. Super. R. Civ. P. 56(c). The trial justice should "draw all reasonable inferences in favor of the nonmoving party and must refrain from weighing the evidence or passing upon issues of credibility." 711 A.2d at 631. However, the nomnoving party has an affirmative duty to specifically set forth all facts demonstrating a genuine issue of material fact. Sisters of Mercy of Providence. Inc. v.Wilkie, 668 A.2d 650, 652 (R.I. 1996) (citation omitted). As such, the nomnoving may not rest upon "allegations or denials in the pleadings, mere conclusions, or mere legal opinions" to create a genuine issue of material fact. Rhode Island DEPCO v. Rignanese, 714 A.2d 1190, 1193 (R.I. 1998) (citations omitted). After reviewing the evidence in the light most favorable to the nonmoving party, the trial justice may grant a summary judgment motion if there are no genuine issues of material fact, and the moving party's claim warrants judgment as a matter of law.Harritos v. Cambio, 683 A.2d 359, 360 (R.I. 1996) (citations omitted); R.I. Super. R. Civ. P.56(c).
 Closing Day
Section 4 of the purchase and sales agreement provides "closing to be held on May 13, 1999 at 10:00 a.m. at the office of the registry of deeds in which the deed should by law be recorded or at such other time and place as may be agreed to by the parties." Exhibit A. Upon discovering that the well on the property was defective, the defendant requested that the closing date be moved to later in May. Plaintiff agreed. This change was not memorialized in writing. The defendant now argues that the oral agreement to change the closing date was ineffective under the Statute of Frauds. Therefore, defendant argues, the failure to close on the original date of May 13 constituted a breach by plaintiff and entitles defendant to keep the $13,000 deposit.
This Court does not share defendant's view of this matter. The purchase and sale agreement allows the buyer a certain amount of time in which to inspect the property should he so choose. This clause is intended to protect the buyer as evidenced by the remedies available in the event of a persisting defective condition.
In the instant case, the plaintiff/buyer discovered a defective condition in the well which needed repair. Defendant/seller elected to repair the defect and the parties extended the closing date to allow seller sufficient time to cure. In or about the middle of April, the plaintiff was informed that the repair had been made but that seller refused to allow a. reinspection. This refusal was the breach of this particular contract and the purchase and sale agreement articulates the appropriate remedy; "If Seller does not so agree or perform .. . this Agreement shall be null and void and Deposits made hereunder shall be refunded." Exhibit A. Seller's blocking of the re-inspection constitutes a failure to perform thereby triggering this escape clause for the buyer.
 Commitment Letter
"This Agreement is subject to the issuance of a commitment letter by an institutional mortgage lender ... to the Buyer not later than April 12,1999 (Contingency Date) in which the Lender agrees to lend up to $200,000 at Current Bank Rate and Points for a term of at least 30 years." ExhibitA. In satisfaction of this term, the plaintiff submitted a letter from USAA Federal Savings Bank which states in pertinent part
 "Sales Price: $203,000.00 Loan Amount: $203,000.00 Interest Rate: 7.25% Type/Term of Loan: VA, 360 months Loan Number: To Be Assigned
 * * *
 Your credit application for a $203,000.00 loan amount has been approved. . . . Once you have selected a home, please call me with the property address and legal description so the appraisal and title search can be ordered. Let me know when you want to close." Exhibit C.
The defendant challenges the adequacy of this letter that plaintiff propounded prior to April 12, 1999. Defendant argues that this letter,Exhibit C, is a pre-approval letter rather than a commitment letter.
Plaintiff challenges defendant's contention, arguing that the letter submitted to defendant was a commitment letter within the parameters set by the purchase and sale agreement. Furthermore, as plaintiff indicates, the defendant never complained about the letter or indicated that it was unacceptable as a commitment letter before the institution of this suit.
Having read the letter in dispute and examined the terms of the purchase and sale agreement, this Court is satisfied that on April 12, 1999, plaintiff had secured a commitment for the requisite $200,000. Whether he decided to research the offers of other lending institutions before actually embracing a mortgage obligation is of no consequence. The fact is, he had one source for the money already lined up by the date stipulated in the agreement as evidenced by the letter.
Based on the record presented, this Court finds that equity dictates a finding in favor of the plaintiff. Therefore, this court grants plaintiffs motion for summary judgment Consequently, defendant's motion is denied and he is hereby ordered to return to plaintiff the $13,000 issued as an initial deposit on the property.