**Maurice C. PARADIS, Director of the Department of Business Regulation of the State of Rhode Island**

v.

**GREATER PROVIDENCE DEPOSIT CORPORATION et al.**

No. 95–266–Appeal.

Supreme Court of Rhode Island.

June 7, 1996.

Theodore Orson, Providence, for Plaintiff.

Robert Gates, Providence, for Defendant.

**OPINION**

BOURCIER, Justice.

This case came before a hearing panel of this Court for oral argument on April 16, 1996, pursuant to an order directing all parties to appear and show cause why the issues

raised by the receiver of the Greater Providence Deposit Corporation, Greater Providence Trust Company, and Community Loan and Investment, in his appeal from a Superior Court judgment in favor of the defendant, Madonna Maggiacomo, should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda filed by the parties, we are of the opinion that cause has not been shown and the receiver's appeal will be decided at this time.

Barry Hittner is the present director of the Department of Business Regulation of the State of Rhode Island.[1] Edward D. Pare, Jr., is the permanent receiver of the Greater Providence Deposit Corporation, Greater Providence Trust Company, and Community Loan and Investment and the appellant here.

On June 1, 1984, Biagio M. Maggiacomo (Biagio) and Greater Providence Deposit Corporation (GPDC) entered into a consultant service agreement. That agreement in both clear and implicit terms sets out the services due from Biagio and the service payment obligations of GPDC. The agreement, although requiring consultant services for a two-year period, June 1, 1984, through May 31, 1986, provided for a compensation payment schedule through May 31, 1996. The agreement provided that in the event of Biagio's death, prior to the expiration of the two-year consulting term or thereafter during the remainder term, his wife, Madonna Maggiacomo (Madonna), would then be paid the contract amounts that would have been due to Biagio, had he not died.

Biagio died on December 3, 1988. Commencing on February 1, 1989, and continuing through March 1, 1991, GPDC paid to Madonna $5,400 per month, with those payments totaling $140,400. On April 16, 1991, in the midst of the Rhode Island credit union turmoil and crisis, GPDC informed Madonna that payments under Biagio's consultant agreement would be discontinued. Shortly thereafter, GPDC and its affiliates, Greater Providence Trust Company and Community Loan and Investment, were placed into receivership by the then director of the State Department of Business Regulation, Maurice C. Paradis. On December 2, 1991, Madonna filed a "Priority Claim of Madonna Maggiacomo" in the amount of $336,742.66 with the receiver of GPDC. That priority claim was alleged to be based upon the balance of payments due to Madonna through the term of the consulting agreement. The theorem underlying her claim was that the consulting agreement between Biagio and GPDC created an implied trust for her benefit, upon the death of Biagio, and the corpus or res funding that trust consisted of three insurance policies insuring the life of Biagio and naming GPDC as beneficiary.

■ The receiver denied Madonna's alleged priority claim.[2] At the hearing following that denial, the Superior Court trial justice found that there was an implied trust that had been created by the consulting agreement, purportedly funded by the proceeds from the three insurance policies insuring the life of Biagio and in which GPDC was the named beneficiary. The trial justice's finding with regard to the trust res, however, is somewhat ambivalent. The total of the three insurance-policy death-benefit payments paid to GPDC and deposited into GPDC's general operating account totaled $253,133.70. Of that amount, only *$107,-979.71* represents moneys paid to GPDC from the insurance policy transferred to GPDC by Biagio. Following Biagio's death, GPDC has, pursuant to the agreement, paid to Madonna from its general operating accounts *$140,000* through March 1, 1991, after which all payments were suspended. Yet the trial justice stated:

> "The actual dollar amounts involved here would depend primarily on whether the two insurance policies purchased by Greater Providence Trust, separate and apart

---

1. At the time these proceedings commenced, the director of the Department of Business Regulation was Maurice C. Paradis. Director Hittner is automatically substituted in his place pursuant to Rule 25(d)(1) of the Superior Court Rules of Civil Procedure.

2. The receiver, while denying Madonna's priority-status claim, does not contest her claim as a general unsecured creditor claim.

from that trust policy issued to Mr. Maggiacomo and transferred by him to Greater Providence Trust, had been exhausted. Those funds obviously are the only funds available to Greater Providence Trust and should have been utilized first in paying off the terms of the agreement upon the death of Mr. Maggiacomo. The trust that I determined in this situation is only that policy transferred by Mr. Maggiacomo to Greater Providence Trust to the extent it has not been utilized in making payments after Mr. Maggiacomo's death. Relatively clear?"

We acknowledge our long-standing rule with regard to decisions made by a trial justice sitting without a jury. In such cases, we will not disturb a trial justice's findings unless we conclude that he or she misconceived or overlooked relevant evidence or was otherwise clearly wrong and committed error of law. *Vargas Manufacturing Co. v. Friedman*, 661 A.2d 48, 53 (R.I.1995). In this case our review of the record reveals to us that the trial justice, in making his finding of an implied trust in favor of Madonna, was clearly wrong and that error constituted manifest error of law.

## The Consulting Agreement and G.L.1956 § 19–15–12

The consulting agreement between Biagio and GPDC was both expertly prepared and clearly precise in its terms. There is nothing within its clear and precise pronouncements that suggests or implies the creation or the intended creation of any express or implied trust for the benefit of Madonna. "When a contract evidences care in its preparation, we will presume that its words were deliberately employed." *Abedon v. Abedon*, 121 R.I. 366, 370, 398 A.2d 1137, 1140 (1979). That omission of any trust suggestion for Madonna in the written agreement, and the absence of any other GPDC document or record concerning any such intended trust, is fatal to her priority claim against the receivership and the receiver and constitutes the obvious infirmity in the trial justice's finding of an implied trust for her benefit.

General Laws 1956 § 19–15–12,[3] in effect at the time of the agreement in question as well as at the time Madonna filed her priority claim with the receiver states in pertinent part as follows:

"No agreement which tends to diminish or defeat the interest of the corporation and any asset acquired by the receiver acting in a proceeding under this chapter * * * shall be valid against the receiver * * * unless such agreement—(1) is in writing, (2) was executed by the corporation and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the assets by the corporation, (3) was approved by the governing body of the corporation or its loan or other authorizing committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the corporation."

This Court has not previously interpreted the nature of the *agreement* required to be in writing in order to be enforceable against a receiver of an insolvent banking institution in this state as provided in § 19–15–12. There is available to this Court for guidance, however, the common-law doctrine noted in *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and the codification of *D'Oench* in the Federal Deposit Insurance Act of 1950, § 2[13](e), as amended, 12 U.S.C. § 1823(e). A reading of 12 U.S.C. § 1823(e) convinces us that it was literally lifted into what is G.L.1956 § 19–15–12. Our statute mirrors 12 U.S.C. § 1823(e). Each requires that any agreement sought to be enforced against a banking institution receiver, at minimum, must be in writing and reflected in or upon the official records of the particular banking institution.

◼ In *D'Oench*, 315 U.S. at 460–61, 62 S.Ct. at 680–81, 86 L.Ed. at 963–64, the United States Supreme Court foresaw the written agreement and bank record require-

---

**3.** General Laws 1956 § 19–15–12 was enacted in 1991 by P.L.1991, ch. 3, §§ 1, 2 and later repealed effective July 1, 1995 by P.L.1995, ch. 82, § 16. It appears in amended form now as G.L. 1956 § 19–12–13.

ments later embodied in the codification of the 1950 Federal Deposit Insurance Act and what is now 12 U.S.C. § 1823(e). That Court held that in litigation between a bank claimant and the Federal Deposit Insurance Corporation as successor in interest to a bank, the claimant could not rely upon agreements outside the documents contained in the bank's records. Some question remained thereafter in regard to whether an implied agreement might be inferred from relevant writings that were part of a bank's records or representations made by bank officials concerning the intended effect of certain records. In *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court laid to rest any attempt to avoid the specific in-writing requirement in 12 U.S.C. § 1823(e). In that case the petitioner-claimants against the bank receiver contended that the word "agreement" encompassed only claims based upon express promises or agreements by the bank and did not bar implied promises or agreements emanating from bank records or bank official representations. In what might today be considered something of rarity, the Supreme Court in a *unanimous* opinion rejected that contention. It held that an implied promise or agreement could not avoid the certain and categorical agreement in writing requirement contained in the 12 U.S.C. § 1823(e) language. Since then, both federal and state court holdings have unanimously and strictly followed the *Langley* ruling in requiring that any alleged agreement, including alleged implied agreements sought to be enforced against a banking institution receiver, be supported by some explicit writing in the bank's official records or by an express written agreement between the banking institution and the claimant. *See, e.g., Federal Deposit Insurance Corp. v. Bay Street Development Corp.*, 32 F.3d 636 (1st Cir.1994); *Bowen v. Federal Deposit Insurance Corp.*, 915 F.2d 1013 (5th Cir.1990); *Beighley v. Federal Deposit Insurance Corp.*, 868 F.2d 776 (5th Cir.1989); *Mechanics and Farmers Savings Bank, FSB v. Delco Development Co.*, 43 Conn.Super. 408, 656 A.2d 1075 (1993); *Smania v. Mundaca Investment Corp.*, 629 So.2d 242 (Fla.Dist.Ct.App.

1993); *Federal Deposit Insurance Corp. v. RGB International Property, Inc.*, 214 A.D.2d 603, 625 N.Y.S.2d 256 (1995); *Bluebonnet Savings Bank v. Jones Country, Inc.*, 911 S.W.2d 871 (Tex.Ct.App.–Beaumont 1995). We accept and adopt the views expressed in the above-noted cases and as recently expressed by the Connecticut court in *Mechanics and Farmers Savings Bank*, 43 Conn.Super. at 416–17, 656 A.2d at 1081. We hold that § 19–15–12, now § 19–12–13, bars the assertion of any claim or defense premised upon any unrecorded agreement between a claimant and a failed banking institution or credit union that does not satisfy all four requirements of § 19–15–12, now § 19–12–13, against the receiver of any financial institution or credit union or against any asset acquired by the receiver as a result of the receivership proceeding.

█ In this case there is nothing contained in the consulting agreement entered into between GPDC and Biagio that speaks or suggests of any trust in favor of Madonna resulting therefrom. In addition, we perceive of no GPDC bank record or any official GPDC writing of any nature presented to the trial justice at hearing that reflected any agreement on the part of the GPDC to create any sort of trust or to be trustee for the benefit of Madonna. The trial justice therefore erred in finding an implied trust in favor of Madonna against the receiver and receivership of GPDC. His finding was precluded by § 19–15–12 and constitutes error of law. Simply put, and borrowing from *Bowen*, "transactions not reflected on the bank's books do not appear on the judicial radar screen either." 915 F.2d at 1016. Madonna's claim is not a priority claim and remains to be considered by the receiver as the claim of a general unsecured creditor of GPDC.

In view of our holding on the receiver's contention concerning the trial justice's implied trust finding, we need not consider the other issues asserted by the parties in their supplemental memoranda or raised by them at the time of oral argument.

The receiver's appeal is sustained, and the judgment appealed from is reversed. The papers of the case are remanded to the Supe-

rior Court for further proceedings in accordance herewith.

WEISBERGER, C.J., and MURRAY, J., did not participate.