## RHODE ISLAND DEPOSITORS ECONOMIC PROTECTION CORP.

v.

## WASHINGTON COUNTY LAND COMPANY., et al.

### No. 95–536–Appeal.

Supreme Court of Rhode Island.

June 6, 1997.

Bruce Gladstone, Robert Fine, Providence, for Plaintiff.

Anthony M. Gallone, Jerry H. Elmer, Patrick J. Tarmey, Providence, for Defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, and FLANDERS, JJ.

### OPINION

PER CURIAM.

This case came before the Court for oral argument on December 6, 1996, pursuant to an order that directed both parties to appear and show cause why the issues raised by the defendants' appeal from a final entry of summary judgment entered in favor of the plaintiff in the Superior Court should not be summarily decided.

After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeal will be decided at this time.

On November 17, 1988, Washington Land Company (Washington), one of the defendants, executed a promissory note for $1.8 million in favor of Rhode Island Central Credit Union (RICCU). Washington intended to use the funds for the purchase and development of real estate located in North Kingstown. An agreement executed together with the note provided that "so long as Borrower is not in default hereunder, Lender shall disburse the Loan Amount in accordance with the terms and conditions of this Agreement and shall otherwise abide by all such terms and conditions." A mortgage on real estate in North Kingstown secured the note. Additionally, the note was personally guaranteed by the other defendants, John DiStefano (DiStefano), Kenneth Hanson, and Mary Hanson.[1]

---

1. The Hansons filed for bankruptcy while the case was pending so only Washington and Di-  Stefano remain as defendants in this action.

A document that the parties refer to as an "indemnification agreement" was also executed the same day as the note. It provided that $444,485.58 of the loan proceeds would be deposited into a savings account at RICCU in the name of Washington and would be pledged as security for a letter of credit issued by RICCU to the town of North Kingstown in order to guarantee completion of the subdivision. The indemnification agreement provided further that as the town released RICCU from its liability on the letter of credit, RICCU would in turn release funds to Washington.

When the banking crisis in Rhode Island escalated and the Governor was forced to close the credit unions on January 1, 1991, $68,033.98 remained in the account. North Kingstown voted to reduce the letter of credit to a zero balance on January 14, 1991, thereby authorizing release of the remaining funds in the account to Washington pursuant to the indemnification agreement. The loan was not in default at that time. Shortly thereafter, RICCU came under receivership pursuant to G.L.1956 chapter 15 of title 19.

The receiver for RICCU never released the remaining Washington account funds of the loan to Washington, but those funds were eventually applied to the outstanding balance of the loan. After the account funds were applied to the loan, the loan, note, and guaranty were transferred to the Rhode Island Depositors' Economic Protection Corporation (DEPCO), which proceeded to foreclose on the mortgage and sell the property at a mortgagee's sale in March 1993. After the foreclosure sale there remained a deficiency on the note. Seeking to recover that deficiency, DEPCO then filed a civil action in the Superior Court. In the course of that action DEPCO filed a motion for summary judgment. A trial justice granted that motion and entered final judgment thereon.[2] Washington and DiStefano appealed.

In their appeal, Washington and DiStefano assert that the failure of RICCU to continue to fund the promissory note, even after its forced closure on January 1, 1991, and the

resulting receivership and transfer of its assets to DEPCO, constituted a material breach of their agreement with RICCU and that that breach was a complete defense to DEPCO's claim for payment on the note. They contend they are not responsible for the deficiency amount. Washington and DiStefano argue further that DEPCO, after it succeeded to the note and guaranty in question, was bound by the terms of both the indemnification and the loan agreements and that, as a result, DEPCO should have released the money to Washington instead of applying it to the amount due on the loan.

Conversely DEPCO asserts that once the automatic stay of RICCU's banking activities was issued by the Governor on January 1, 1991, neither the receiver for RICCU nor DEPCO had any authority or obligation to continue to fund the note and to provide those funds to Washington's land development project. DEPCO argues that there was nothing in the note or in the loan agreement executed with the note that *required* RICCU to continue to fund Washington's land development as a condition precedent to payment on the note. We agree with DEPCO.

Although the indemnification agreement was executed at the same time as the promissory note, there is nothing in the note itself that conditions its obligations on the performance of the indemnification agreement. In fact, quite conversely, the note clearly states that the note is due and payable *on demand* "at any time." The note also reserved to RICCU the right and option to setoff, at any time, the amount still due on the note with any funds on deposit with RICCU, such as the funds released from the letter of credit. Additionally, the guaranty from which DiStefano's liability stems states that the guarantors "absolutely and unconditionally guarantee to the Credit Union, its successors and assigns, the punctual payment in full at maturity of any and all such loan notes * * * and any and all interest due thereon * * *."

Those obligations incurred pursuant to the promissory note and the guaranty were

**2.** The judgment contains a finding by the Superior Court justice that no just reason for delay in entering final judgment existed, and therefore, pursuant to Super.R.Civ.P. 54(b), the Superior Court justice entered final judgment.

completely absolute. Washington and Di-Stefano are unable to point out in any of the loan documents any provisions therein that would indicate that their obligations to RICCU were conditioned upon RICCU's funding of the property development in North Kingstown. Although the loan agreement executed at the same time as the note required RICCU to disburse the loan money as long as Washington was not in default, it did not provide that either Washington's obligations under the note or DiStefano's obligations under the guaranty were conditioned upon RICCU's continual disbursement of the loan funds.[3] Since RICCU's obligations under the indemnification and loan agreements were completely independent of Washington's obligations under the note and DiStefano's obligations under the guaranty, DEPCO had every right to setoff the obligation owed on the loan with the funds contained in the special Washington savings account maintained pursuant to the indemnification agreement. Such right of setoff was preserved to RICCU through the plain language of the promissory note, and after the assets of RICCU were transferred to DEPCO, such right of setoff was preserved to DEPCO as well.

Accordingly, we conclude that absent the showing of any explicit loan documentation language that made payment under the note in question conditioned upon RICCU's obligations pursuant to the indemnification and loan agreements, the Superior Court's grant of summary judgment was proper. *See Howell v. Continental Credit Corp.*, 655 F.2d 743, 747 (7th Cir.1981).

For all the foregoing reasons, the defendants' appeal is denied and dismissed, the final judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.

GOLDBERG, J., did not participate.

---

**3.** At the time of the drafting and the execution of the loan documents in question, it appears perfectly obvious that none of the parties envisioned the banking catastrophe that loomed ahead and surfaced on January 1, 1991. Consequently, it is understandable why the conditions precedent now urged by Washington and DiStefano were not included in the executed loan documents.