DECISION
Before this Court is the Rhode Island Depositors Economic Protection Corporation's (hereinafter "DEPCO") motion for partial summary judgment pursuant to Super. R. Civ. P. 56. James Procaccianti, individually and as executor of the estate of Armand Procaccianti (hereinafter "defendant"), has timely filed an objection to the motion.[1]
 Facts/Travel
The defendant executed and delivered a Note dated January 31, 1990 (hereinafter "Note") to Marquette Credit Union, which provided as follows:
 "FOR VALUE RECEIVED, the undersigned unconditionally and joint and severally promise to pay to MARQUETTE CREDIT UNION, a Rhode Island credit union ("Lender"), or order, at its offices at One Marquette Plaza, Woonsocket, Rhode Island 02895, or at such other place as may be designated in writing by the holder hereof, the principal sum of THREE MILLION ($3,000,000.00) DOLLARS, or such lesser amount as may be outstanding from time to time under a Loan Agreement of even date herewith between the undersigned and Lender, together with interest in arrears from the date hereof on the unpaid principal balances outstanding hereunder, at the rate equal to the Gold Seal Rate, as hereinafter defined, plus THREE AND ONE QUARTER (3.25%) PERCENT per annum."
The Note was secured by a mortgage on approximately 250 acres of land in Hopkinton, Rhode Island. The defendant also executed a loan agreement which specified the terms and conditions under which he would be eligible to receive up to $3 million in revolving financing.
On January 1, 1991, Bruce Sundlun, then Governor of the State of Rhode Island, approved "Special Regulations and Order Issued Pursuant to Title 19, Chapter 18 of the General Laws of Rhode Island" ordering the closure of those financial institutions insured by the Rhode Island Share and Deposit Indemnity Corporations (RISDIC), which included Marquette Credit Union, that were "unable to obtain adequate deposit insurance." See G.L. 1956 § 19-12-6(1). On January 4, 1991, Richard W. MacAdams, counsel to the defendant, sent a letter to Marquette Credit Union setting out various claims of the defendant and his business associates, including the right of setoff, arising out of Marquette's inability to fulfill its contractual obligations due to the credit union's forced closing. The letter stated:
 "[o]ur firm is counsel to Hillside Associates (`Hillside'), a Rhode Island general partnership comprised of Fordson Associates, a Rhode Island general partnership, and Armand Procaccianti. We are also counsel to James Procaccianti and Armand Procaccianti individually ("the Procacciantis"), and to Federal Hill Properties, L.P. ("FHP"), a Rhode Island limited partnership. Hillside is a borrower from Marquette Credit Union ("Marquette") under the terms of a Loan Agreement entered into with Hillside on August 7, 1990 ("Agreement."). FHP is currently a borrower from Marquette. The Procacciantis are guarantors of the indebtedness of Hillside and FHP." (Ltr. dated January 4, 1991 at 1.)
The letter further explains that Marquette's breach of contract led to the discontinuation of certain construction projects and its closure "jeopardized substantial economic interests." (Id. at 1-2.) Although the letter does not specifically mention the defendant's January 31, 1990 Note, it does state:
 "with respect to the guaranties of James Procaccianti and Armand Procaccianti for the indebtedness due from Hillside and FHP to Marquette, we view the conduct of Marquette as releasing the Procacciantis from their guaranties under these and other obligations guaranteed by them to Marquette." (Id. at 2.)
The defendant stopped making payments on the $3,000,000 loan from Marquette and Marquette made no further advances under the loan agreement following its closure by the state. Subsequently, in March of 1991, Marquette was placed in receivership pursuant to G.L. 1956 §§ 19-15-1
to 16, the Financial Institution Receivership Act (hereinafter "FIRA").[2] On May 2, 1991, the Director of the State Department of Business Regulation was appointed temporary receiver of Marquette. This appointment became permanent on May 17, 1991 thereby vesting the receiver with all of Marquette's right, title and interest in and to its property. The receiver was empowered to sell and convey his right, title, and interest in Marquette's property, including the Note and the loan agreement at issue in this case. On May 22, 1992, a Superior Court justice approved the sale of substantially all of Marquette's assets, including the Note at issue in this case by Marquette's receiver to DEPCO.[3]
Pursuant to that order, DEPCO assumed certain deposit liabilities.
On May 29, 1992, the defendant along with other claimants filed a proof of claim in the Marquette Receivership.[4] The proof of claim provides that the claimants "established various debtor-creditor relationships with Marquette Credit Union . . . pursuant to which Marquette had loaned, or committed to loan, funds to Borrowers pursuant to the term of written agreements." (Proof of Claim at 4.) The proof of claim addressed the claims of specific borrowers, including the August 7, 1990 loan to Hillside, standby letters of credit to benefit Proc Associates, and a loan to Federal Hill Properties. (Id. at 5-7.) Moreover, the proof of claim stated that Marquette's failure to fulfill these obligations resulted in harm to each of the claimants. (Id. at 6-7.) However, the proof of claim does not mention the January 31, 1990 Note executed by the defendant. On June 24, 1992, the sale of Marquette Credit Union's assets was consummated with the signing of a sales agreement between DEPCO and Marquette's receiver.
As previously stated, the defendant stopped making payments on the Note after Marquette Credit Union's forced closure on January 1, 1991. As a result of his default, on March 24, 1993, DEPCO foreclosed the mortgage on the Hopkinton property that secured the Note. The property was sold for $145,000.[5] In 1994, DEPCO brought suit against the defendant to collect the deficiency of the balance owed under the Note. However, Armand Procaccianti died on August 22, 1995. By stipulation dated November 14, 1995, James Procaccianti, executor of the estate of Armand Procaccianti, was substituted as the co-defendant. It also should be noted that the defendant along with Eve Procaccianti held a joint passbook savings account certificate of deposit, account number 66118-71, at Marquette Credit Union. On June 12, 1992, the funds contained in this account, then totaling $465,460.43, were used to pay off the balance of two loans: $232,483.04 was applied to loan number 53060-2 and $232,977.39 was applied to loan number 53060-30, the January 31, 1990 loan at issue in the instant case.
In July 1995, DEPCO filed its initial motion for summary judgment to which the defendant timely filed an objection. The defendant argued that (1) statutory claims of setoff existed against DEPCO pursuant to § 19-15-7(c) of FIRA and (2) the foreclosure sale of the Hopkinton property was commercially unreasonable. On March 19, 1996, this Court denied DEPCO's motion for summary judgment because the motion justice "did not believe that Title 42 [the DEPCO Act] in any way precludes the raising of common law or equitable defenses, assertions of setoffs, claims that the liquidator acted in a commercially unreasonable fashion, or the like."[6]
In July 1998, DEPCO and the defendant agreed to stay this litigation pending the Supreme Court's adjudication of Rhode Island DepositorsEconomic Protection Corp. v. Tasca, C.A. No. 96-___, February __, 1998, Clifton, J, given the commonality of issues in the cases.[7] The Supreme Court affirmed the trial court's grant of DEPCO's motion for summary judgment on May 26, 1999.[8]
DEPCO has once again submitted a motion for summary judgment to this Court regarding defendant's claim of setoff. DEPCO requests that this Court reverse its prior ruling permitting the defendant's claim of setoff to proceed to trial. DEPCO contends that the Supreme Court's ruling inRhode Island Depositors Economic Protection Corp. v. Bowen CourtAssocs., 763 A.2d 1005 (R.I. 2001) and Rhode Island Depositors EconomicProtection Corp. v. Tasca, 727 A.2d 707 (R.I. 1999) (per curiam)), confirms that DEPCO is immune from claims of setoff. Moreover, DEPCO argues that the defendant will be unsuccessful even if his allegations are classified as defenses rather than as a claim of setoff. DEPCO contends that there are only two types of defenses that can be asserted against DEPCO with regard to the acts or omissions of a failed credit union and that the defendant has failed to raise either of these types of defenses. First, the defendant has not asserted any real defenses that make the underlying loan void as opposed to merely voidable. DEPCO maintains that because the defendant has acknowledged the validity of the Note he is precluded from raising a real defense. Second, DEPCO maintains that the defendant has not and cannot present any explicit writing or express written agreement between Marquette Credit Union and the defendant that will support his defense. DEPCO asserts that the defendant cannot point to any terms in the Note that will justify nonpayment of the debt.
The defendant maintains, however, that the cases relied upon by DEPCO are distinguishable from the instant case. The defendant argues that the Court's decision in Tasca, 727 A.2d at 707, was prompted by the lack of evidence to support claims of setoff rather than a determination that the defendant was not entitled to setoff as a matter of law. In addition, the defendant directs this Court's attention to the Rhode Island Supreme Court's recent opinion in Couture v. Pawtucket Credit Union, 765 A.2d 831
(R.I. 2001), on the subject of setoff. Moreover, the defendant argues that DEPCO is not a holder in due course and there are real defenses, particularly the actual knowledge of DEPCO of the defendant's claim of setoff, that can be asserted against DEPCO. In the alternative, the defendant contends that if G.L. 1956 § 42-116-6(b), the DEPCO Act, is construed to prohibit the defendant from asserting a claim of setoff against DEPCO, then the court should find that the act is unconstitutional. The defendant argues that G.L. 1956 § 42-116-6(b) infringes on his constitutional rights because it operates to (1) impair the obligation of contracts, (2) deprives him the equal protection of the laws, (3) violates due process, and (4) denies him a remedy for the wrong he has suffered in violation of the Fifth Amendment of the Rhode Island Constitution.
 Standard of Review
Super. R. Civ. Proc. 56 empowers a trial justice, upon proper motion, to enter summary judgment in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus in a proceeding for summary judgment, the court must "examine the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law." Buonnanno v. Colmar Belting Co., Inc.,733 A.2d 712, 715 (R.I. 1999) (citing Textron, Inc. v. Aetna Casualty andSurety Co., 638 A.2d 537, 539 (R.I. 1994)). The party opposing a motion for summary judgment may not merely rely upon mere allegations or denials in his or her pleadings. Small Business Loan Fund v. Loft, 734 A.2d 953, 955 (R.I. 1998) (citing Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998)). Rather "[a] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothersof Cranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (citing Manning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v.Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
 Claims of Setoff
DEPCO maintains that the Rhode Island Supreme Court's determinations, that as a matter of law, DEPCO is immune from claims of setoff, should govern the instant matter and thus this Court should grant its motion for partial summary judgment. See Rhode Island Depositors Economic ProtectionCorp. v. Bowen Court Assocs., 763 A.2d 1005 (R.I. 2001) and Rhode IslandDepositors Economic Protection Corp. v. Tasca, 727 A.2d 707 (R.I. 1999) (per curiam)). However, the defendant contends that his claims of setoff are expressly permitted by statute, G.L. 1956 § 19-15-1, et seq., and that DEPCO is not insulated from setoff by G.L. 1956 § 42-116-6(b), the DEPCO Act. The defendant bases his argument that DEPCO is not immune from claims of setoff on the lack of any provision in FIRA, G.L. 1956 § 19-15-1, et seq.,[9] that specifically states that the receiver of a failed institution may sell or transfer assets free and clear of claims or defenses, particularly the rights of secured creditors. Moreover, the defendant contends that to the contrary FIRA "expresslyrecognizes setoff . . . and gives holders of claims of setoff a status equivalent to that of secured creditors." (Def.'s Mem. of Law at 5.) The defendant relies specifically on G.L. 1956 § 19-15-7(c), which provides as follows:
 "[t]he claim of a creditor which is secured by a mortgage, security interest or lien on property in which the corporation has an interest is a secured claim to the extent of the value of the estate's interest in such property, or to the extent of amounts subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditors' interest or the amount so subject to setoff is less than the amount of such claim as approved by the court. Only the unsecured portion of the claim of such creditor shall participate in a distribution provided for in subsection (a) hereof."[10]
Thus the defendant argues that this provision guarantees his right of setoff such that DEPCO's motion for partial summary on the issue of claims of setoff should be denied.
However, this Court finds that the Supreme Court's rulings in BowenCourt, 763 A.2d at 1005, and Tasca, 727 A.2d at 707, are controlling and warrant the granting of DEPCO's motion for partial summary judgment. InBowen Court., 763 A.2d at 1006, Bowen Court Associates and the Rhode Island Central Credit Union ("RICCU") entered into a financing arrangement whereby Bowen could receive up to $2.1 million for a real estate project. Id. At the closing, RICCU advanced Bowen Court $525,000.Id. When the banking crisis in Rhode Island escalated, RICCU was one of several financial institutions forcibly closed by the state. RICCU was placed in receivership and no further financing was provided by RICCU or its receiver after January 1, 1991. Id. During the receivership proceedings, Bowen Court submitted a verified claim seeking monetary damages purportedly caused by RICCU's failure to continue funding the project. Id. Bowen Court asserted "the right to `an equitable setoff with respect to such sums as might otherwise be due from [Bowen Court] to RICCU to date pursuant to the Financing Documents.'" Id. Subsequently, RICCU's receiver foreclosed on real property that secured Bowen Court's debt. Id. In June 1992, DEPCO purchased substantially all of RICCU's assets from the receiver, which included the note and loan documents involving Bowen Court. Id. DEPCO then commenced a suit against defendants seeking to collect on the outstanding balance on the note. Id. at 1007. In response, Bowen Court raised "`claims in the nature of setoff or recoupment.'" Id. After a nonjury trial, a Superior Court justice allowed defendants' claims and entered judgment in their favor. Id. However, the Supreme Court sustained DEPCO's appeal and directed judgment be entered in its favor. Id.
The Supreme Court arrived at its decision after a careful review of the relevant documents and the statutes at issue. Id. With respect to Bowen Court's verified claim asserting a right of "equitable setoff," the Court wrote "[c]laims of `setoff,' however, were expressly disclaimed in the Agreement [between DEPCO and the Receiver], indicating that DEPCO intended to disclaim the very `recoupment' defense that Bowen Court asserted in its verified claim." Id. at 1008. Moreover, the Court stated "we construe § 42-116-6(b) as permitting DEPCO to assume liabilities free of all defenses including recoupment defenses, and excepting only those liabilities expressly assumed." Id. Although the facts in Bowen
dealt specifically with a recoupment defense,[11] the Court held that "to allow a setoff or recoupment would contravene the intent of the Legislature in enacting the DEPCO statute, which allows DEPCO to assume all, none, or any portion of the liabilities of an eligible institution."Id. at 1010 (emphasis added). Thus the Court "conclude[d] that DEPCO is immune from defendants' recoupment defense." Id. at 1009.
The transfer documents involved in the instant case mirror the transfer documents involved in Bowen Court. For example, the order issued by the Superior Court provided:
 "7. The transfers made and other transactions contemplated by the Application shall be made free and clear of all mortgages, security interests, liens or claims whatsoever and otherwise shall be made in accordance with and have the benefit of the terms and conditions of said offer. 8. Except for the Assumed Deposit Liabilities (as defined in the Offer) and the liabilities expressly assumed by DEPCO under the DEPCO/Receiver Agreement, DEPCO shall not assume or become liable for any other liability of the Institutions or their Receivers of any kind or nature."[12]
Section 3 of the "Offer to Purchase Assets and Assume Certain Liabilities" of Marquette Credit Union provided that "[t]itle to [a]ssets so acquired shall be transferred by the Receiver to DEPCO free and clear of all mortgages, security interests, liens, attachments, encumbrances, claims and counterclaims whatsoever."[13] In addition, Section 5 of the Offer stated:
 "[p]ursuant to the Act, § 42-116-6(B), DEPCO does not and shall not, assume or in any way become liable for any debts, claims or liabilities of the Institutions, other than the Assumed Deposit Liabilities specifically assumed pursuant to Paragraphs 4 and 6 hereof. Neither DEPCO nor any of its successors or assigns shall be or become liable as a result of this Offer, the Court Order, any counterclaim or other claim of liability, whether as a successor to or assignee of any Institution, the Receiver or otherwise, for any debts or liabilities of, or claims against the Institutions, whatsoever, including (without limitation) claims against the Institutions or the Receiver for violations under any statute such as, for example, 15 U.S. Code Sections 1601, et seq., and regulations issued thereunder, and for any acts or omissions by the Institutions or their Receiver, or for any default by the Institutions under any agreement, acceptance, letter of credit, guaranty or other commitment or contract of the Institutions of any kind, whether now existing or hereafter arising, that has not been specifically assumed by DEPCO as Assumed Deposit Liabilities pursuant to paragraphs 4 and 6 hereof or by an assignment or assumption document executed by DEPCO."[14]
The DEPCO/Receiver Agreement ("Agreement") assigned substantially all of Marquette's loans to DEPCO and Section 7 of the Agreement states:
 "No Assumption by DEPCO. Except for the express provisions of paragraphs 5, 6, 8 and 9 of this Offer, DEPCO shall not assume or otherwise become liable for any claims against or liabilities of the Institutions or the Receiver to secured creditors, to depositors, to non-deposit or administrative expense creditors of the Institutions whether their claims are liquidated, unliquidated, contingent, known or unknown or otherwise, nor shall DEPCO assume or be or [sic] or become liable with respect to any setoff or counterclaim or other claim or liability, whether as a successor to or assignee of the Institutions, the Receiver or otherwise, for any other debts or liabilities of, or claims against, the Institutions or Receiver whatsoever, including (without limitation) claims against the Institutions or the Receiver with respect to violations under any statute such as, for example 15 U.S.C. § 1601 et seq., and regulations issued thereunder, damages for breach of any contract, commitment, letter of credit, guaranty or other agreement by the Institutions to pay or lend money, property or provide other value."[15]
Finally, Marquette's receiver also executed an Assignment of Loans as part of the transfer of Marquette's assets to DEPCO. This document provides, in pertinent part, that:
 "nothing contained herein shall be construed to make DEPCO responsible or liable for any of the obligations or liabilities of any of the Credit Unions or the Receiver under any of the Purchase Loans which arose or are based upon actions or omissions of any of the Credit Unions or the Receiver prior to the date hereof."[16]
Thus similar to the situation in Bowen Court, the different transfer documents involved in the sale by Marquette of substantially all its loans to DEPCO contained disclaimers that allowed DEPCO to avoid assuming or becoming liable to defendant's claims of setoff. Moreover, the interplay between these documents and G.L. 1956 § 42-116-6(b) allows DEPCO to assume liabilities free of all defenses, including claims of setoff. Given that these documents and the controlling statute allow DEPCO to specifically disclaim any liabilities and counter claims, DEPCO is immune from defendant's claims of setoff.
Moreover, this Court finds the defendant's contention that DEPCO is not immune from claims of setoff because FIRA, G.L. § 19-15-1, et seq.,
expressly permits the right of setoff, unavailing. The Rhode Island Supreme Court rejected just such an interpretation of the Act in Tasca,
727 A.2d at 708, and the Court's holding is controlling in the instant case. Accordingly, the defendant's contention that DEPCO is not immune to setoff must fail. In Tasca, Hillside Associates, a Rhode Island general partnership engaged in real estate development, executed a note in favor of Marquette Credit Union for $4.6 million in return for a loan of that amount. Id. at 707. Richard Tasca and Peter Rotelli, the defendants, executed a personal guaranty of this loan. Id. As stated previously, Marquette Credit Union was one of several financial institutions closed by the banking crisis in Rhode Island. Id. at 708. After the closure, the defendants sent a letter to the credit union setting out various claims, "including the right of setoff."[17] In addition, after Marquette was placed in receivership, the defendants filed a proof of claim with Marquette's receiver for the same claims mentioned in their previous letter. Id. A sales agreement was eventually entered into whereby Marquette's receiver sold substantially all of Marquette's loans to DEPCO. Id. DEPCO brought suit against defendants, on their guaranty, for breach of contract to recover the debt due as a result of Hillside's defaulted loan. Id. DEPCO's motion for summary judgment was granted by the Superior Court in February 1998. The defendants appealed the grant of summary judgment asserting that the "trial justice erred by granting summary judgment in contravention of their alleged right of set off."Id. In affirming the trial court's grant of DEPCO's motion for summary judgment, the Court relied heavily on its analysis in Rhode IslandDepositors' Economic Protection Corp. v. NFD Co., 687 A.2d 452, 454 (R.I. 1997), wherein it wrote "claims arising from agreements [must be] `supported by some explicit writing in the bank's official records or by an express written agreement between the banking institution and the claimant.'" In Tasca, however, the defendants failed to provide the Court with any "specific evidence of an explicit written agreement," and this failure was "dispositive of its challenge to the propriety of DEPCO's summary judgment motion." Id. at 709. Moreover, the Court wrote:
 "[a]dditionally, we reject defendants' interpretation of G.L. 1956 § 19-15-7(c) dealing with receiverships which would transform the alleged right of set-off into a secured claim. We hold that the plain meaning of this statutory section does not support such a contention." Id. (Citations omitted.)
It is precisely this same argument that the defendant is attempting to resurrect in the instant case when he argues that "§ 19-15-7(c) represents an explicit legislative recognition that a creditor's rights of setoff remains attached to and follows his obligation owed to the institution, and that right of setoff is similarly afforded a priority status superior to all unsecured creditors of the institution." (Def.'s Mem. of Law at 9.) Although the Court's explanation for its interpretation of G.L. § 19-15-7(c) is pithy, the Court has nonetheless previously rejected the argument advanced by the defendant.[18] Given that this Court is bound by the Supreme Court's holding in Rhode Island Depositors Economic Protection Corp.v. Tasca, 727 A.2d 707 (R.I. 1999) (per curiam)), the defendant's argument that the right to setoff is expressly permitted by statute is once again rejected.
 D'Oench Duhme Doctrine
DEPCO next argues that the defendant's allegations do not raise the type of defenses that can be asserted against DEPCO regarding the conduct of a failed credit union. DEPCO maintains that it is well-settled law that there are only two types of defenses that can be asserted against DEPCO arising out of the alleged acts or omissions of a failed credit union. DEPCO contends that neither of these two defenses, (a) real defenses that make the underlying loan void rather than merely voidable and (b) defenses arising from agreements that are supported by an explicit writing in the failed institution's records or by an express written agreement between the institution and the claimant, are applicable in the instant matter. First, DEPCO insists that the defendant cannot raise any real defenses against DEPCO because he concedes that a valid Note was executed. Thus to succeed on their claim, DEPCO avers that the defendant must point to some agreement in writing to support his defenses.
In turn, the defendant responds that DEPCO's reliance on G.L. 1956 § 42-116-23 is misplaced. However, this argument is premised on defendant's erroneous interpretation, as explained previously, that G.L. 1956 § 19-15-7(c) provides a secured right of setoff against DEPCO. Nevertheless, the defendant also contends that DEPCO does not enjoy holder in due course status because DEPCO had actual knowledge of the defendant's claim of his right of setoff.
In Rhode Island Depositors Protection Corporation v. Ryan, 697 A.2d 1087, 1093 (R.I. 1992), the Rhode Island Supreme Court held that "the same concerns that prompted the federal courts to extend the holder-in-due-course doctrine to the FDIC apply with equal force to DEPCO." In addition, the Court addressed growing concerns regarding the existence of federal holder in due course status when it wrote: "[r]egardless of the effect of Erie and O'Melveny on the federal holder-in-due-course doctrine, we are of the opinion that such a doctrine is properly applied to DEPCO under Rhode Island law." Id. at 1094 n. 4. However, the Court also took care to note that "[t]he protection enjoyed by a holder in due course . . . is not absolute." Id. In order to pierce the protections afforded by holder-in-due-course status, the party asserting the defense must "establish that the FDIC possessed actual knowledge of the defense before taking the note." Id. (citing FDIC v.Wood, 758 F.2d 156, 162 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985)). In the instant case, the defendant's contention that DEPCO had actual knowledge of his claim of setoff is based on the January 4, 1991 letter sent by defendant's counsel to Marquette Credit Union setting out various claims of the defendant and his business associates, including the right of set-off, and the proof of claim filed with the Marquette receiver on May 29, 1992. However, neither the January 4, 1991 letter nor the proof of claim specifically mention the January 31, 1990 Note executed by the defendant. In addition, the Court in Ryan analogized that DEPCO could not be "charged with knowledge of a defense `merely because that information could be found in the bank's files.'" Id. at 1094. Similarly, in the case at bar, the defendant cannot base his charge that DEPCO was aware of his claim of setoff on the presence of the letter and proof of claim in Marquette Credit Union's files on the defendant. Thus defendant's assertion that DEPCO does not enjoy holder-in-due-course status fails. The only defenses available to the defendant are real defenses or a written agreement to support the defense of setoff.
In Rhode Island Depositors Economic Protection Corporation v. NFD Co.,
687 A.2d at 454, the Rhode Island Supreme Court wrote that "[t]he federal courts have consistently held that the only claims and defenses that can be raised against the Federal Deposit Insurance Corporation (FDIC), the federal counterpart of DEPCO, are real defenses that make the underlying loan agreement void and not merely voidable." Real defenses are defenses that can be asserted against a holder in due course and against the note, including "infancy; incapacity, duress, or illegality of the transaction that renders the party's obligation a nullity; fraud in the factum; and discharge in bankruptcy." See Ryan, 697 A.2d at 1092. In the case at bar, the defendant has not raised any of these defenses against DEPCO. Thus the defendant's only recourse is to show that his claim arose from agreements that are "supported by some explicit writing in the bank's official records or by an express agreement between the banking institution and the claimant." NFD Company, 687 A.2d at 454 (quotingParadis v. Greater Providence Deposit Corp., 677 A.2d 1340, 1343 (R.I. 1996) (citations omitted)).
General Laws 1956 § 42-116-23[19] provides that:
 "[n]o agreement which tends to diminish or defeat the interest of the corporation in any assets acquired by it under this chapter shall be valid against the corporation unless such agreement:
 (a) Is in writing;
 (b) Was executed by the eligible institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the execution of acquisition of the asset by the eligible institution;
 (c) Was approved by the board of directors of the eligible institution or its loan committee; which approval shall be reflected in the minutes of the board or committee; and
 (d) Has been, continuously, from the time of its execution an official record of the eligible institution."
In the instant case, the defendant relies on two documents wherein he asserts that allegations regarding Marquette's obligation under the loan agreement: the January 4, 1991 letter that was sent by his counsel to Marquette Credit Union and the proof of claim filed with the Marquette receiver on May 29, 1992. However, the defendant has failed to produce "any evidence of an explicit written agreement that required Marquette to fund the real estate development fully, as required by § 42-116-23."NFD Co., 687 A.2d at 454. The facts of the case at bar are similar to those of Rhode Island Depositors Economic Protection Corp. v. Tasca,
727 A.2d 707, 708 (R.I. 1999) (per curiam)) wherein the defendants "grounded their claim to set-off in allegations contained in Hillside's January 4, 1991 letter and their May 29, 1992 Proof of Claim." The Tasca
Court affirmed the grant of DEPCO's motion for summary judgment because "the record contained no evidence other than these allegations establishing that Marquette owed defendants any outstanding obligation."Id. Also, in Rhode Island Depositors Economic Protection Corp. v.Washington Land Co., 694 A.2d 720, 721 (R.I. 1997), the court examined the loan documents involved and found "nothing in the note itself that conditions [the credit union's] obligations on the performance of the indemnification agreement." Thus the court "conclude[d] that absent the showing of any explicit loan documentation language that made payment under the note in question conditioned upon RICCU's obligations pursuant to the indemnification and loan agreements, the Superior Court's grant of summary judgment was proper." Id. Thus, in the instant case, the defendant's failure to "present any specific evidence of an explicit written agreement . . . is dispositive of its challenge to the propriety of DEPCO's motion for summary judgment." Id.
 Constitutionality of the DEPCO Statute
In the alternative, the defendant argues that should this Court interpret G.L. 1956 § 42-116-6(b)[20] to prohibit his claim of setoff, then this Court should strike down G.L. § 42-116-6(b) as unconstitutional. The defendant contends that G.L. 1956 § 42-116-6(b) impermissibly infringes on his constitutional rights by: (a) impairing the obligation of contracts, (b) depriving him of the equal protection of the laws, (c) violating due process, and (d) denying him a remedy for the wrong that he has suffered. DEPCO responds by noting that the Rhode Island Supreme Court has summarily rejected several constitutional challenges by repeatedly holding the DEPCO Act to be constitutional. Thus DEPCO argues the defendant's assertions of unconstitutionality should fail as well.
Given that all enactments of the General Assembly enjoy a presumption of constitutionality and validity, the defendant has undertaken a tremendous task in seeking to prove that G.L. 1956 § 42-116-6(b) is unconstitutional. It is well settled that courts will not invalidate a legislative enactment unless the challenger can "prove beyond a reasonable doubt" that the statute is "repugnant to a provision in the Constitution." Gorham v. Robinson, 57 R.I. 1, 7, 186 A. 832, 837 (1936). Moreover, the Rhode Island Supreme Court has written that its "evaluation of legislative enactments has been extremely deferential . . . we have interfered with such enactments only when the legislation at issue could palpably and unmistakably be characterized as an excess of legislative power." In re Christopher S., 776 A.2d 1054, 1056 (R.I. 2001) (quotingCity of Pawtucket v. Sundlun, 662 A.2d 40, 44 (R.I. 1995)). Finally, the court "will make every reasonable intendment in favor of constitutionality of a legislative act, and so far as any presumption exists it is in favor of so holding." State v. Garnetto, 75 R.I. 86, 94,63 A.2d 777, 781 (1949).
The DEPCO Act has been both explicitly and implicitly found and declared to be constitutional. See Rhode Island Depositors EconomicProtection Corp. v. Brown, 659 A.2d 95, 100-06 (R.I. 1995), cert.denied, sub nom, Ernst Young v. Rhode Island Depositors EconomicProtection Corp., 516 U.S. 975, 133 L.Ed.2d 405, 116 S.Ct. 476 (1995); Inre Advisory Opinion to the Governor (DEPCO), 593 A.2d 943, 946 (R.I. 1991); Rhode Island Depositors Economic Protection Corp. v. Phillips,643 A.2d 215 (R.I. 1994); and, Paradis v. Greater Providence DepositCorp., 677 A.2d 1340 (R.I. 1996). Moreover, the DEPCO Act has consistently been held not to violate the contracts clause of both the Rhode Island and United States Constitution.[21] In Energy ReservesGroup, Inc. v. Kansas Power Light Co., 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), the United States Supreme Court announced a three-part test to determine whether legislation unconstitutionally impairs the obligation of contracts. The Court must first determine whether:
 "the state law [has] in fact substantially impaired a contractual relationship. . . . . Second, if the law constitutes a substantial impairment, can the state show a legitimate public purpose behind the regulation, `such as the remedying of a broad and general social or economic problem?' . . . . Third, is the legitimate purpose sufficient to justify the impairment of the contractual rights." Brown, 659 A.2d at 106.
It is unnecessary for this Court to consider each of the prongs of the test because the second factor will be dispositive in the determination that G.L. 1956 § 42-116-6(b) is constitutional.
The Rhode Island Supreme Court has previously stated in a contracts clause challenge of the DEPCO Act that "even if we were to find an impairment of the contractual relationship, that impairment would be sufficiently justified by the legitimate public purpose of returning funds to deposit creditors and eventually the Rhode Island economy." Id. at 106. See also, In re Advisory Opinion to the Governor (DEPCO), 593 A.2d at 946. The Court has previously stated that the DEPCO Act "was adopted subsequent to a crisis of monumental proportions affecting the well-being of thousands of Rhode Island depositors. We agree that facilitating settlement of DEPCO litigation in light of the depletion of credit union insurance policies would ultimately relieve to some extent the taxpayers [sic] cost of the bailout." Id. at 104. Section 42-116-6(b) serves a "legitimate function by enhancing the revenues from which DEPCO can discharge its obligations to the public which ultimately funds the short-fall in assets to pay depositors created by the insolvency of entities like Marquette."[22] This provision allows the sale of assets of a failed credit union, like Marquette, to be free of claims such as those advanced by the defendant thereby reducing the burden on the general public. Thus G.L. 1956 § 42-116-6(b) does not impair the obligation of contracts.
The defendant's argument that G.L. § 42-116-6(b) violates the equal protection clause of the Rhode Island and United States Constitutions must fail for a similar reason.[23] To determine if a statute complies with equal protection standards, this Court must examine both the nature of the classification established by the act as well as the individual rights that might be violated by the act. See Boucher v. Sayeed,459 A.2d 87, 91 (R.I. 1983). The different standards employed by the court are as follows:
 "[i]f a statute either infringes upon fundamental rights or results in the creation of a suspect classification, the statute must be examined with strict scrutiny. . . . . If an act employs a gender- based classification, it is subject to a middle-tier scrutiny in which the classification must be substantially related to the achievement of the statutory objective. . . . Lastly, purely economic legislation that does not disadvantage a suspect class or impinge upon a fundamental right passes constitutional muster if a rational basis exists for it." Rhode Island Depositors Economic Protection Corp. v. Brown, 659 A.2d 95, 100 (R.I. 1995) (citations omitted).
In the instant case, the DEPCO Act does not infringe on a fundamental right or result in the creation of a suspect classification. Thus the Act is economic legislation that requires rational basis review. The Rhode Island Supreme Court has previously analyzed the DEPCO Act as economic law and applied the rational basis test. See In re Advisory Opinion tothe Governor (DEPCO), 593 A.2d at 950-51 and In re Advisory Opinion tothe Governor (DEPCO), 593 A.2d 1356, 1360 (R.I. 1991). The Court wrote that "examining whether the DEPCO Act bears a rational relationship to [a] legitimate state purpose, we must examine whether the Legislature, `could rationally conclude that [the DEPCO Act] would effectuate a resolution to a legitimate problem.'" Rhode Island Depositors EconomicProtection Corp. v. Brown, 659 A.2d 95, 100 (R.I. 1995) (citations omitted). In enacting the DEPCO Act, the General Assembly created DEPCO "to remedy the economic disaster arising from the failure of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC) and the subsequent banking crisis. . . . . Thus [the DEPCO Act] is a comprehensive plan enacted to deal with an overwhelming economic and human crisis." In re Advisory Opinion to the Governor (DEPCO), 593 A.2d at 950-51. Given this broad purpose, this Court cannot conclude that G.L. 1956 § 42-116-6(b) is "wholly irrelevant to the achievement of the state's objectives." Brown, 659 A.2d at 101. This Court finds that the DEPCO Act is rationally related to a legitimate public purpose and thus survives the defendant's equal protection challenge.
The defendant further maintains that the DEPCO Act violates the due process guarantees contained in article 1, section 2, of the Rhode Island Constitution and section 1 of the Fourteenth Amendment of the United States Constitution.[24] The Rhode Island Supreme Court has stated that in analyzing whether the DEPCO Act violates the due process clause, it must first determine whether the Act is retroactive in nature. Id. at 102. However, the Court further explained that "[a]lthough a statute has retroactive effect that implicates property rights, it does not necessarily follow that the statute is unconstitutional." Id. at 103. In such situations, the court employs a balancing test whereby the public interest in retroactivity is weighed against the unfairness that such retroactively necessarily creates. Id. The unfairness of retroactively can be measured "by the party's reliance on the preexisting state of the law." Id. (quoting Brennan v. Kirby, 529 A.2d 633, 640 (R.I. 1987)). If the court determines that the unfairness outweighs the benefit, then the statute lacks a rational basis. Id. (citing Lawrence v. Anheuser-Busch,Inc., 523 A.2d 864, 870-71 (R.I. 1987)). This balancing test was conducted by the court in Brown, where it found that the DEPCO Act does not offend the due process clause of either the United States Constitution or the Rhode Island Constitution. In Brown, the court explained "[t]here is great public interest in minimizing the taxpayers' liability for the depositor bailout. This legislation was adopted subsequent to a crisis of monumental proportions affecting the well-being of thousands of Rhode Island depositors." Id. at 104. Similarly, in the instant case, G.L. 1956 § 42-116-6(b), which permits DEPCO to assume all, none, or any portion of the liabilities of an eligible institution, will "ultimately relieve to some extent the taxpayers cost of the bailout." Id. Thus balancing this public interest against the alleged unfairness to the defendant, this Court finds that the State's interest prevails. Therefore, this Court finds that the DEPCO Act does not violate the due process clause of the Fourteenth Amendment of the United States Constitution or the Rhode Island Constitution.
The defendant has also raised a due process violation, claiming lack of notice, with respect to the Superior Court order that approved the sale of assets from the Marquette receiver to DEPCO.[25] The defendant contends that since he received no notice of the hearing, the order has no binding effect. DEPCO insists that this issue was previously raised to the Rhode Island Supreme Court, which rejected this due process argument and all other constitutional challenges in Rhode Island DepositorsEconomic Protection Corp. v. Tasca, 727 A.2d 707 (R.I. 1999) (per curiam)). Moreover, DEPCO argues that the defendant failed to seek to vacate, appeal or otherwise challenge the Superior Court order based on its purported lack of notice. Instead, the defendant submitted his proof of claim to the receiver a week after the order was entered and never raised any lack of notice concerns. Given these facts, this Court does not find a due process violation with respect to defendant's claim of lack of notice of the issuance of the order approving the sale of assets from the Marquette receiver to DEPCO.
Finally, the defendant contends that G.L. 1956 § 42-116-6(b) violates R.I. Const. art. 1, sec. 5, which provides that:
 "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely and without purchase, completely and without denial; promptly and without delay; conformably to the laws."
However, the defendant's assertion fails because there is a remedy at law for the alleged wrong that he has sustained. Moreover, the defendant pursued this remedy when he filed a proof of claim against the receiver. Although this Court acknowledges the concern raised by the defendant that "a claim against the receivership is utterly valueless; it is no remedy at all,"[26] it nonetheless finds that the defendant has failed to carry his heavy burden of proving beyond a reasonable doubt that G.L. 1956 § 42-116-6(b) is constitutional.
Thus this Court finds that the defendant has failed in each of the constitutional challenges brought against the DEPCO Act. This Court holds that G.L. 1956 § 42-116-6(b) does not violate the Contracts Clause, the Equal Protection Clause, or the Due Process Clause of the United States or Rhode Island Constitutions. In addition, G.L. 1956 §42-116-6(b) does not violate R.I. Const. art. 1, sec. 5.
 Conclusion
Summary judgment will be granted when this Court finds that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, as well as a review of the other materials properly before this Court, this Court finds there to be no genuine issues of material fact. Therefore, the plaintiff, DEPCO, is entitled to partial summary judgment.
Counsel shall submit an appropriate order and judgment for entry.
[1] This action was, initially brought against both James Procaccianti and Armand Procaccianti. After Armand Procaccianti's death on August 22, 1995, James Procaccianti, as executor of his father's estate was substituted as co-defendant. Accordingly, James and Armand Procaccianti will be referred to throughout this decision as the "defendant."
[2] FIRA was repealed by the legislature on June 20, 1995 but the General Assembly enacted a substantially similar statute in its place.See G.L. 1956 §§ 19-12-1 to 17.
[3] Paradis v. Marquette Credit Union, C.A. No. 91-3220, May 22, 1992, Krause, J. (Order).
[4] The other claimants were Hillside, Fordson, Meadowbrook Associates, North Shore Associates, Speedi Rentals, Inc., Procaccianti Hotels of Ohio, Limited partnership, Proc Investments, L.P., Proc. Associates, Inc., Euclid Properties, L.P., FHP, Weetamoe Associates, James Procaccianti, Armand Procaccianti, Richard Tasca, Peter Rotelli, Rhode Island Mill Corp., Rudolph Procaccianti, Mark Bacon and Henry Bacon.
[5] James Procaccianti states that the 250 acres of real estate in Hopkinton, Rhode Island, which served as collateral for repayment of the Note, was appraised and valued at $5.7 million with an indicated land value of $2.64 million. (James Procaccianti Aff. 4.) See also Ltr. from Appraisal Services of New England, Inc. dated December 20, 1998. DEPCO states "that the only triable issue raised by defendants concerns the commercial reasonableness of DEPCO's foreclosure of the land securing the Note." (Pl.'s Mem. of Law at 12.) Moreover, DEPCO acknowledges that the issue surrounding DEPCO's conduct in this sale must be adjudicated at a later date. Id. The instant motion is not directed to this issue at all.
[6] Rhode Island Depositors Economic Protection Corp. v. Procaccianti,
C.A. 94-2635, March 19, 1996, Fortunato, J. at 43.
[7] In November 1996, DEPCO had also filed suit against Richard Tasca and Peter Rotelli, who were members of the Hillside Associates, as guarantees of a $4.6 million loan made by Marquette to Hillside Associates in October 1986. These defendants raised the same legal arguments regarding their claims of setoff. In February 1998, this Court granted summary judgment in DEPCO's favor. Rhode Island DepositorsEconomic Protection Corp. v. Tasca, C.A. 96-___, February __, 1998, Clifton, J.
[8] Rhode Island Depositors Economic Protection Corp. v. Tasca,729 A.2d 707, 709 (R.I. 1999).
[9] G.L. 1956 § 19-15-1 to 17, repealed and replaced by, P.L. 1995, ch. 82, §§ 16 50 (codified at G.L. 1956 chapter 12 of title 19, specifically § 19-12-7(c)).
[10] G.L. 1956 § 19-15-7(c) is based on Section 506(a) of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., which provides that:
 "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition use or on a plan affecting such creditor's interest."
[11] The Court explained that "[a]n equitable setoff `arises out of a transaction different from that sued on,' . . . whereas recoupment arises out of the same transaction." Id. at 1008 n. 3 (citations omitted).
[12] Paradis v. Marquette Credit Union, C.A. No. 91-3220, May 22, 1992, Krause, J. (Order) at 3-4.
[13] Ltr. from Richard Gaskill, Director DEPCO, to Maurice C. Paradis, Marquette Credit Union Receiver, dated May 28, 1992 at 5.
[14] Id. at 6-7.
[15] DEPCO/Receiver Agreement at 7-8.
[16] Assignment of Loan signed June 24, 1992 at 2.
[17] Id. This very letter was quoted, in part, on page 2 of this decision.
[18] This Court notes that this argument was raised by defendants Tasca and Rotelli, who were represented by the same counsel in the instant matter, and was summarily rejected by the Court in Rhode IslandDepositors Economic Protection Corp. v. Tasca, 727 A.2d 707 (R.I. 1999) (per curiam)). This claim was also rejected by another court in HillsideAssociates v. Miriam Hospital, C.A. 95-3787, March 20, 1996, Israel, J. , when it wrote:
 "[t]he plaintiffs' argument that § 42-116-6(b)
somehow conflicts with § 19-15-7(c) arises from a misapplication of § 19-15-7(c). That section deals with the claims against a receiver by creditors of an insolvent financial institution who are entitled to a security interest in the assets of that institution. It may be that the plaintiffs' claim against the receiver is a secured claim to the extent of their rights of setoff, as may be determined at the conclusion of litigation to establish that setoff. It is nonetheless still a claim, which did not follow the asset to DEPCO under § 42-116-6(b) and pursuant to the final, unappealled Order of this Court in the receivership proceeding." Id. at 13.
[19] This statutory provision codifies what has come to be known as the D'Oench Duhme doctrine. See D'Oench, Duhme Co. v. Federal DepositInsurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed.2d 956 (1942). Seealso, Paradis v. Greater Providence Deposit Corp., 677 A.2d 1340, 1343 (R.I. 1996) (discussing the codification of D'Oench, Duhme in G.L. 1956 § 19-15-12, which contains essentially identical language as §42-116-23)).
[20] Section 42-116-6(b) states that DEPCO is empowered:
 " . . . to assume all, none, or any portion of the liabilities . . . of said eligible institution at such terms and in such manner as the corporation shall deem advisable, however, that the corporation shall be responsible and liable only for those liabilities specifically assumed and shall bear no responsibility or liability for any other debts or liabilities of such eligible institutions."
[21] Rhode Island Const. art. 1, sec. 12 and the U.S. Const. art. I, sec. 10 provide that "no law impairing the obligation of contracts shall be passed."
[22] Hillside Associates v. Miriam Hospital, C.A. 95-3787, March 20, 1996, Israel, J. at 15.
[23] The R.I. Const. art. 1, sec. 2 and the U.S. Const. Amend. XIV, sec. 1 guarantees to all persons "the equal protection of the laws."
[24] The due process clause of the Fourteenth Amendment provides that "no state shall . . . deprive any person of life, liberty, or property without due process of law." R.I. Const. art. 1, sec. 2 states "[n]o person shall be deprived of life, liberty or property without due process of law."
[25] Paradis v. Marquette Credit Union, C.A. No. 91-3220, May 22, 1992, Krause, J. (Order).
[26] Def.'s Mem. of Law at 32.